UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Santander Consumer USA, Inc.,

       Plaintiff,

v.

Superior Pontiac Buick GMC, Inc.,

       Defendant.

_____/

Case No. 10-13181

Honorable Nancy G. Edmunds

### OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO STRIKE [124, 126, 132]

Defendant Superior Pontiac Buick GMC, Inc., has filed three motions to strike affidavits that Plaintiff Santander Consumer USA, Inc., has used in support of its partial motions for summary judgment.[1]  (Dkt. 124, 126, 132.)

The Court denies Defendant's motions.  The Court has thoroughly reviewed the affidavits that Defendant challenges and the Court finds that Plaintiff has made the appropriate representations so that the Court may consider the affidavits and that Plaintiff has made the representations to authenticate and consider the underlying documents upon which the affidavits rely.

The Court first addresses Defendant's motion to strike the affidavits of Mitchel P. O'Neil and Hoyle W. "Barney" James for Plaintiff's alleged untimeliness in disclosing them as witnesses.  (Dkt. 126.)  The Court then addresses Defendant's other two motions to

---

[1]The Court originally scheduled a hearing on these motions.  After reviewing the pleadings, the Court finds that a hearing is unnecessary and dispenses with one pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  The hearing date for the pending motions for summary judgment remains unchanged.

strike, which are essentially identical, and seek to strike Brandon Dry's affidavit, arguing that it is not based on personal knowledge, and seek to strike Dry, James, and O'Neil's affidavits, arguing that the underlying documents are inadmissible at trial and therefore that the Court should not consider the affidavits or exhibits on the pending motions for summary judgment.

## I.    Case overview

As part of its business, Plaintiff purchases automobile retail installment contracts from automobile dealers, such as Defendant.  Plaintiff and Defendant entered into a retail installment sales agreement for automobile financing (the "Agreement").  The Agreement provided that Defendant could submit proposals to sell/assign certain retail installment sales contracts to Plaintiff (the "Contracts").   As part of the proposal process, Plaintiff alleges that Defendant represented the condition and equipment options regarding the Contracts' subject vehicles.  Defendant entered into 322 Contracts and assigned them to Plaintiff.  Plaintiff alleges that Defendant misrepresented the condition and equipment options on the vehicles, prompting this lawsuit.  Defendant alleges that, under the Agreement, Plaintiff did not fulfill several of the conditions precedent in order for Defendant to be liable under the Agreement.

## II.    Facts related to the motions to strike

The motions to strike attack the underlying documents that the affiants seek to authenticate and have the Court consider on the motions for summary judgment, and, if

necessary, at trial.  The Court therefore presents a brief overview of the facts necessary for this order.[2]

When Plaintiff considers purchasing an automobile retail installment contract from Defendant, Defendant sends Plaintiff a Bookout Sheet.  This Bookout Sheet contains information about the condition and attributes (equipment options and identification) of the automobile.  Plaintiff alleges that it relies on these Bookout Sheets in deciding whether to purchase the contract.  This lawsuit centers around 322 contracts on which the automobile owner defaulted.  After a default occurs, Plaintiff states that it repossesses the vehicle, sells the vehicle at auction, and then applies the proceeds from the sale of the auction to the amount owing on the vehicle.  When the auction house takes possession of the vehicle, it inspects the vehicle and enters the data into what is known as the AutoIMS database.  Several hours after entering the initial data in the AutoIMS database, Plaintiff states that an inspector performs a more thorough manual inspection, the results of which are used to create a Condition Report.  This Condition Report details the vehicle's condition and attributes.  The auction house then enters the data into the AutoIMS database and Plaintiff can access the information from that.  Plaintiff then states that it routinely, and in the normal course of its business, compares the Condition Reports to the initial Contracts, Bookout Sheets, and other records to verify the condition and attributes of the vehicle involved.

With this overview, the Court now addresses Defendant's motions to strikes, and adds the facts required, when necessary.

---

[2]The Court has created this factual overview from Plaintiff's affidavits, as it is those affidavits that present the overview.

**II.   Defendant's motion to strike Plaintiff's first amended initial witness list due to untimeliness**

The Court first addresses Defendant's motion to strike Hoyle W. "Barney" James and Mitchell P. O'Neil's affidavits and exhibits for Plaintiff's alleged failure to timely identify them as witnesses.[3]  (Dkt. 126, ¶ 3.)  The Court denies this motion.

Defendant argues that Plaintiff did not identify O'Neil until Plaintiff filed its first amended witness list on May 4, 2012.  (Dkt. 126, ¶ 4.)  Defendant maintains that that disclosure date was "too late to meaningfully schedule the deposition of any discovery of [O'Neil.]" (*Id.*)  Defendant argues that listing O'Neil as a witness just seven days before the close of discovery is inconsistent with the Federal Rules and is improper.  (*Id.* ¶ 7.)

Defendant argues that the Court should strike James's affidavit for two reasons.  (Dkt. 126, ¶ 6.)  Defendant argues that Plaintiff cannot use Defendant's listing of James on its own July 1, 2011 witness list because Defendant states that Plaintiff never listed James as a witness and never made James's exhibits available to Defendant.  (*Id.*)

Plaintiff argues that it timely complied with the Court's order for witness designation–that all witnesses be disclosed before the close of discovery.  (Dkt. 127, ¶ 2.)  Plaintiff states that it served its updated witness list, which included James and O'Neil, on May 4, 2012, when the discovery deadline was May 11, 2012.  (*Id.*)

Plaintiff addresses Defendant's argument that Defendant had no opportunity to depose O'Neil.  (Dkt. 127, ¶ 6.)  Plaintiff argues that O'Neil appeared on hundreds of "Condition Reports" that Plaintiff produced in this case, as early as 2011.  (*Id.*)  Plaintiff

---

[3]O'Neil is the Assistant Vice President–Asset Remarketing for Plaintiff.  (Dkt. 120, O'Neil Aff. ¶ 2.)  James is the Fraud/Risk Analyst for Plaintiff.  (Dkt. 120, James Aff. ¶ 2.)

further argues that O'Neil's title and job function was disclosed to Defendant in deposition testimony in November, 2011, "nearly six months before the close of the discovery period." (*Id.*)  Plaintiff also argues that in the time period after it officially listed O'Neil as a witness and not since then, Defendant did not seek, and has not sought, to depose O'Neil.  (*Id.* ¶ 7.)

Plaintiff also addresses Defendant's argument against the James affidavit.  (Dkt. 127, ¶ 8.)  Plaintiff argues that Defendant itself had designated James as a witness on July 1, 2011 and that Plaintiff expressly "incorporated" Defendant's witness list into its own witness list.  (*Id.*)  Plaintiff additionally argues that James's name appeared on more than 300 "Demand Letters" relating to the contract at issue–therefore Defendant cannot claim surprise or prejudice by James's affidavit.  (*Id.*)  Plaintiff further argues that Defendant has not supported its argument that striking James's testimony is required when it listed James as its own witness.  (*Id.*)

The Court denies Defendant's motion to strike.  The Court does recognize that Plaintiff did officially list James and O'Neil as witnesses only seven days before the discovery deadline, and, under different circumstances, the Court might find that disclosure insufficient.  *See Dunn ex rel. Albery v. State Farm Mut. Ins. Co.*, 264 F.R.D. 266, 280 (E.D.Mich. 2009) ("The reason for [a scheduling order] is that discovery follows the disclosure of witnesses, wherein the parties have the opportunity to depose the witnesses and prepare for trial.  Without a deadline for the disclosure of witnesses, a party could add witnesses on the eve of trial and leave their adversary with no opportunity to depose the witnesses or adequately prepare for trial." ) But here, the Court finds that Defendant's motion to strike is untimely.  Plaintiff first listed the two witnesses on May 4, 2012.  Plaintiff

5

attached the affidavits to its prior motion for partial summary judgment, which it filed on May 25, 2012. (Dkt. 94, Exs. B, C.) Defendant responded to the motion for partial summary judgment and did not address or object to the two affidavits. (Dkt. 106.) Defendant's first apparent objection to James and O'Neil occurred on July 27, 2012, when Defendant filed its motion to strike and objections to Plaintiff's summary judgment evidence submitted in response to Defendant's amended motion for summary judgment. (Dkt. 124.) Defendant therefore filed this motion to strike almost three months after the initial official disclosure.

If Defendant had raised a timely objection to James and O'Neil's affidavits, then the Court may have had the opportunity to timely address the objection and could have permitted extra time for Defendant to depose James and O'Neil, as the Court permitted time for Defendant to depose the objected-to-witnesses that the Court addressed in its June 26, 2012 order. (Dkt. 114, June 26, 2012 Order at 1-2.) *See also Alford v. Pousak*, 09-15517, 2009 WL 1299568, at*1 (E.D.Mich. Apr. 29, 2009) *(*noting that the motion to strike two affidavits was untimely as the affidavits had been on the docket for over two months.).

Given Defendant's delay in filing this motion, the fact that Plaintiff technically complied with the discovery deadline, and that Defendant was presented with the affidavits in a prior motion for partial summary judgment and did not object to the affidavits at that time, the Court DENIES Defendant's motion to strike on the basis that James and O'Neil were not timely disclosed. (Dkt. 126.)

## III.   Defendant's  motions to strike on the basis of hearsay

The next two motions are essentially the same; Defendant asks the Court to strike the affidavits of Dry, James, and O'Neil as well as the exhibits attached to the affidavits and the

6

underlying documents: Bookout Sheets; the information from the AutoIMS database; Condition Reports; Demand Letters; Account Summaries; and the Summary Chart/Evidence Summary.[4] (Dkt. 124, 132.)  Defendant objects to the exhibits and the underlying documents as hearsay that do not fall under any hearsay exception.  The Court denies these motions.

Rule 56 provides that a court may rely on materials presented in a motion for summary judgment so long as the material would be admissible at trial.  Fed.R.Civ.P. 56(c)(2).  Affidavits and declarations used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

Evidence is generally admissible if it is relevant, meaning the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence."  Fed.R.Evid. 401; *United States v. Morales*, 687 F.3d 697, 702 (6th Cir. 2012).

---

[4]The Court notes that the second motion to strike is virtually the same as the first; the Court will only cite to the first motion to strike. The Court has addressed and rejected Defendant's arguments regarding the timeliness of James and O'Neil's affidavits, above. The Court will not address those same arguments that Defendant presents in these two motions to strike.  Brandon Dry is the Assistant Vice Principal–Funding for Plaintiff. (Dkt.120, Ex. A, Dry Aff. ¶ 2.)  Before he was the Assistant Vice Principal–Funding, Dry states that he was the Assistant Vice President–Dealer Operations, the duties of which included running the department that investigated dealer misconduct such as the misrepresentation of equipment options on vehicles that are the subject of retail installment contracts.  (*Id.*)

Evidence that is hearsay is not admissible unless it falls under a hearsay exception.[5] Fed.R.Evid. 801. Two hearsay exceptions are at issue here: the business records exception and the summaries exception.

The business records exception excludes from the rule against hearsay:

> A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by- - or from information transmitted by - - someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances or preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6). In this circuit, for a business record to be admissible, "it must satisfy four requirements [:](1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge." *United States v. Moon*, 513 F.3d 527, 545, n. 2 (6th Cir. 2008) (citation omitted).

"To be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation." *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 757-76 (6th Cir. 1999) (citation omitted). "All that is required of the witness is that he or she be familiar with the

---

[5]Hearsay is a statement a declarant makes while not testifying at a trial or hearing and that a party offers into evidence to prove the truth of the matter asserted in the statement. Fed.R.Evid. 801(c).

8

record-keeping procedures of the organization." *Id.* at 576 (citation omitted). *See also United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) ("When a witness is used to lay the foundation for admitting records under Rule 803(6), all that is required is that the witness be familiar with the record keeping system.") ("The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system.").

Rule 1006, the summary evidence rule, provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed.R.Evid. 1006. The Sixth Circuit imposes five requirements for the admission of summary evidence: (1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation. *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008) (citation omitted).

Defendant objects to the following documents/exhibits: the Bookout Sheets; the AutoIMS database information; the Condition Reports; the Demand Letters; the Account Summaries; and the Summary Chart/Summary Evidence.[6]

### A. Bookout Sheets

Again, the Bookout Sheets are documents that Plaintiff states Defendant supplies to Plaintiff that shows the vehicle's condition and attributes.

Defendant argues that the Bookout Sheets are "without foundation, unauthenticated, and unreliable." (Dkt. 124, ¶ 6.) Defendant also argues that Dry "has not been shown to have the knowledge of [Plaintiff's] Bookout Sheet procedures." (*Id.*) Defendant suggests therefore that the Bookout Sheets are hearsay and that they do not fall within the business record exception "since they are alleged to be [Defendant's] documents and not [Plaintiff's.]" (*Id.*)

Defendant further objects to the Bookout Sheets on all 322 vehicles for the reason that Plaintiff did not provide in its discovery response Bookout Sheets for all of the 322 vehicles.[7] (Dkt. 124, ¶ 11.)

Dry states that the Bookout Sheets are documents provided by Defendant to Plaintiff. (Dry Aff. ¶ 6.) Dry states that, from his work experience, he is "familiar with the procedures used by dealers in the preparation of the Bookout Sheets." (*Id.* ¶ 7.) Dry states that

---

[6]Plaintiff states that the Summary Chart contains information made up from the Bookout Sheets, the Account Summaries, the Condition Reports, and the Demand Letters. (Dkt. 129, Pl.'s Br. ¶ 5.)

[7]Plaintiff does not directly address this contention. But Plaintiff has represented that it used the Bookout Sheets to create the Evidence Summary, which the Court addresses below  Plaintiff states that it supplied all the information that it used to create the Evidence Summary to Defendant.

Plaintiff keeps the Bookout Sheets in "the regular course of its business and [they are] an integral part of Plaintiff's records for the account/Contract/Vehicle." (*Id.*) Dry explains that, "[t]he vehicle is typically in [] Defendant's possession at the time the Bookout Sheet is prepared by an employee of Defendant and transmitted to Plaintiff; and that employee has personal knowledge of the information recorded in the Bookout Sheet by virtue of [] Defendant's possession of the vehicle." (*Id.*) Dry then states that Plaintiff relies upon the Bookout Sheets in "deciding whether to to purchase the Contract and how much to pay for the Contract, and [Plaintiff] relies on the dealer's representations of the condition and equipment options stated in the Bookout." (*Id.*)

Plaintiff argues that it has properly authenticated the documents and that the documents do not have to be Plaintiff's own documents for them to be admissible as business records. (Dkt. 129, Pl.'s Br. ¶ 6.) Both Dry and James state in their affidavits that the Bookout Sheets are sent to Plaintiff from Defendant in the normal course of business. (*Id.*) Plaintiff therefore suggests that the business records exception to hearsay would apply.

Plaintiff alternatively argues that the documents are not hearsay at all because Plaintiff is not trying to use the Bookout Sheets to prove the truth, but rather the falsity, of what the Bookout Sheets contain. (Dkt. 129, Pl.'s Br. ¶ 7.)

The Court agrees with Plaintiff. Plaintiff has properly authenticated and represented that the Bookout Sheets are (1) made in the normal course of business; (2) kept in the regular course of business; (3) are normally made for business; and (4) were made by someone whose business was to make the Bookout Sheets. The Court further finds that Dry has properly authenticated the Bookout Sheets by stating that he is familiar with the

11

Bookout Sheets record-keeping system and the process of submitting Bookout Sheets to Plaintiff.  The Court therefore rejects Defendant's argument and finds the Bookout Sheets are admissible.

The Court also agrees with Plaintiff that, since Plaintiff is offering the Bookout Sheets to prove that they are false, the Bookout Sheets are not hearsay, and therefore there is no objection to the Bookout Sheet admission.[8]

### B.  AutoIMS database

Defendant objects to the testimony about the AutoIMS database–arguing that it is not Plaintiff's database and records and therefore inadmissible hearsay.  (Dkt. 124, ¶ 9.)

Dry states that the AutoIMS database is a software program and internet "conduit" or portal through which Plaintiff and the auctions access and modify the database records. (Dry Aff. ¶ 14.)  Dry states that this database "is accessible and may be modified  in limited fashion by [Plaintiff] and its sub-contractor auctions." (*Id.*)  Dry then describes the auction check-in procedure for the vehicles.  (*Id.* ¶ 15.)  Dry states that he has "personally observed check-in inspections at auctions." (*Id.*)  He also states that he has "had discussions with auction representatives in which they have explained . . . and demonstrated the 'check-in' procedure." (*Id.*)  He adds that he has had discussions with Plaintiff's employees who manage Plaintiff's relationships with the auctions "who have personal knowledge of the procedure and they have explained . . . the 'check-in inspection' procedure." (*Id.*)    Dry

---

[8]"When statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant.  Since there is no need to assess the credibility of the declarant of a false statement, . . . no purpose . . . would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted. . . . . [S]tatements offered to prove the falsity of the matter asserted are not hearsay." *Hathaway*, 798 F.2d at 905.

explains how the AutoIMS database "Condition Reports" are created for each vehicle.  (*Id.* ¶ 16.)  Dry then states how the Condition Reports are uploaded to the AutoIMS database and how Plaintiff can print off a copy of the Condition Report.  (*Id.* ¶¶ 17, 18.)  Then Dry states that 322 Condition Reports of the vehicles at issue in this case have been included in the exhibits.  (*Id.* ¶ 18.)   Dry further states that Plaintiff and its employees review the Condition Reports and the information in them and check the Condition Reports for accuracy and verify the Condition Reports against the Contract, Bookout Sheets provided by Defendant, and other records to verify the condition, equipment options, and identification of the vehicles involved.  (*Id.*)  Dry states that Plaintiff maintains the Condition Reports in the regular course of its business.  (*Id.*)

Again, the Court finds that Plaintiff has presented witnesses who are familiar and supervised in the entering of information into the AutoIMS database and the extraction of information out of the database. O'Neil represents that he has received training in the AutoIMS database from representatives of the AutoIMS/Auto Auction Services, Corp., and that he has conducted self-paces training to familiarize himself with the database.  (Dkt. 120, O'Neil Aff. ¶ 5.)  O'Neil has described the AutoIMS process and how Plaintiff receives information from the database.  (*Id.* ¶ 6.)  Here then, Plaintiff has presented a witness who is familiar with the AutoIMS database system and record keeping procedures and has made representations that satisfy Rule 803(6)'s requirements.   The Court rejects Defendant's argument with respect to the AutoIMS database.

### C.  Condition Reports

The Condition Reports, again, are documents created after repossession of a default vehicle–they relate the results of inspections of the vehicles.

Defendant argues that Dry admitted that he did not personally review all of the Condition Reports and that they are therefore "unauthenticated, unreliable, and without proper foundation." (Dkt. 124, ¶ 8.) Defendant also argues that the Condition Reports are not Plaintiff's records and that the content of the Condition Reports is hearsay and does not fall within the business records exception. (*Id.*)

Dry states that he supervised James, who personally prepared the Condition Reports "from data stored in a database record created by Plaintiff and including data and photos transmitted to that record by the auto auction at which the Condition Report inspection occurs." (Dry Aff. ¶ 8.) James explicitly states that he "personally prepared the Condition Reports from data stored in a database record created by Plaintiff and including data and photos transmitted to that record by the auto auction at which the Condition Report inspection occurs." (James Aff. ¶ 5.)

Plaintiff argues that the Condition Reports are hard copies of data compilations and records prepared "post-repossession" that reflect the equipment options on the vehicles at issue, as determined by the physical inspections. (Dkt. 129, Pl.'s Br. ¶ 14.) Plaintiff further argues that the Condition Reports are created by Plaintiff, and specially created by James. (*Id.*) (See Dry Aff. ¶ 8, James Aff. ¶6.) Plaintiff maintains that Dry and O'Neil testified that representative samples of the Condition Reports were attached to their affidavits and are true and accurate copies of the Condition Reports. (*Id.* ¶ 14.) Plaintiff further maintains the Condition Reports are "an 'integral part' of Plaintiff's business records that are created, maintained and relied upon as accurate by Plaintiff (as well as the auto auction) in conducting post-repossession auction sales of the Vehicles to foreclose on the collateral

14

and credit the customer's accounts for the proceeds." (*Id.* ¶ 15) (citing O'Neil Aff. ¶ 10; Dry Aff. ¶ 18, James Aff. ¶ 6.)

Plaintiff states that O'Neil's affidavit supports its business records argument with respect to the Condition Reports. (Dkt. 129, Pl.'s Br. ¶ 16.) Plaintiff states that O'Neil was the Assistant Vice President of Asset Remarketing for Plaintiff since 2005," is in charge of the department responsible for Plaintiff's repossession and sale of repossessed collateral such as the Vehicles at issue in this suit as well as managing the relationship with the auto auctions that handle the inspection and sale of Plaintiff's collateral and AutoIMS which stores and transmits the data contained in Plaintiff's Condition Reports. (*Id.*) Plaintiff represents that O'Neil participated in, received training in, and observed the processes of the auction and AutoIMS "in collecting and transmitting to Plaintiff's database record the information contained in Plaintiff's Condition Reports which provide the basis of the 'missing equipment' information reflected on Plaintiff's Evidence Summary[.]" (*Id.*) Plaintiff further represents that O'Neil's department instructs the auctions on "the processes to be followed in conducting the post-repossession Condition Report Inspections and both he and his department staff regularly supervise the auction's conduct of those inspections to assure their reliability." (*Id.*)

The Court again finds that the Condition Reports are business records that fall within the hearsay exception. The Court also notes that Dry states that he supervised James in the creation of the Condition Reports and that James created these reports. Both Dry and James, therefore, are qualified witnesses, who can attest to the documents.

**D.  Demand Letters**[9]

Defendant objects to "each of the Demand Letters and the Summary Chart information on Exhibit 2 . . . as they are not true and accurate copies of the originals."  (Dkt. 124, ¶ 10.)

Dry explains that the Demand Letters are "communications that were prepared by [Plaintiff] . . . and transmitted to Defendant in the course of carrying out departmental duties following the identification of "missing equipment" on a vehicle that has been repossessed and processed by an auto auction."  (Dry Aff. ¶10.)  Dry states that he supervised one of Plaintiff's employees who "personally prepared each of the Demand Letters that have been produced in the lawsuit."  (Dry Aff. ¶ 10.)  Dry represents that the Demand Letters are true and correct copies of the letters transmitted by Plaintiff to Defendant.  (*Id.*)

Plaintiff argues that the Demand Letters are true and accurate copies of the Demand Letters and that Plaintiff produced the original dates sent for the Demand Letters.  (Dkt. 129, Pl.'s Br. ¶ 20.)

The Court finds that Plaintiff has appropriately authenticated the Demand Letters and that they are admissible.

**E.  Account Summaries**

Defendant also objects to the Account Summaries as Defendant alleges that Dry "admits he reviewed only some of them."  (Dkt. 124, ¶ 7.)

---

[9]Plaintiff does state that the dates on the Demand Letters are incorrect.  Plaintiff explains that, when it reprinted the Demand Letters, the computer program automatically updated the dates in the letters.

Plaintiff states that the Account Summary are "screen prints" of data compilations contained in Plaintiff's computer records. (Dkt. 129, Pl.'s Br. ¶ 12.)  Plaintiff further argues that both James and Dry are qualified witnesses who have properly laid the foundation for the admissibility of the Account Summaries.  (*Id.* ¶ 13.)  Plaintiff maintains that Dry states that he supervised James in the preparation of the material, and that both are familiar with the record keeping system that produced the Account Summaries.  (*Id.*)

James states he "personally prepared" the Account Summaries. (James Aff. ¶ 9.) He further explains that he "personally reviewed the account data for each account and compared the data stored in the computer system to the data reflected on the Account Summaries "screen print outs" and the Account Summaries are accurate and true and correct data compilations of the information contained in Plaintiff's computer records for each account."  (James Aff. ¶ 9.)  Dry adds that, "[f]rom [his] experience managing the Dealer Operations Department  and [] as the [Assistant Vice President of Funding] [that he has] personal knowledge that the Account Summaries are accurate and true and correct data compilations of the information contained in Plaintiff's computer records for each account."  (Dry Aff. ¶ 11.)

The Account Summaries are admissible.  Plaintiff has made the representation that they are made in the course of regularly conducted business, kept in the course of business, regularly made, and made by a person whose business is to make them.  And the Court finds that Plaintiff can present witnesses to authenticate the Account Summaries.

### F.  Summary Chart/Evidence Summary

Defendant objects to the Summary Chart.  (Dkt. 124, ¶ 5.)  Defendant states that Dry "did not review all of the materials on which the Summary Chart is based."  (*Id.*)

17

Dry states that he supervised Plaintiff's employee, James, "in preparing a summary chart containing information taken directly from more than 6,000 pages of materials that Plaintiff has produced to Defendant during the course of this lawsuit." (Dry Aff. ¶ 4.) Dry states that the Summary Chart "contains the Name, Santander Account Number, VIN, Unpaid Account Balance, Discount, Amount Owed (Unpaid Balance less Discount), a list of the missing equipment identified, and the 'Bates #'s' associated with the documents produced to Defendant that contain the information provided in the Summary Chart." (Dry Aff. ¶ 5.) Dry states that he "personally reviewed many of the materials that provide the information in the Summary Chart" and that he "supervised [Plaintiff] employees who have reviewed all the materials that provide the information contained in the Summary Chart." (*Id.* ¶ 6.) Dry further states that the Summary Chart "accurately reflects the information contained in those materials and presents the information in a non-prejudicial manner." (*Id.*)

Plaintiff argues that the summary chart meets the standards required by Rule 1006. Plaintiff argues that the 6,700 pages of documents is voluminous, that it produced those documents to Defendant, that the documents are admissible as a business record and can be entered into evidence by a qualified witness, Dry has represented that the Summary Chart is non-prejudicial, and that Dry and James present testimony regarding the supervision and preparation of the Summary Chart. (Dkt. 129, Pl.'s Br. ¶¶ 2-4) (citing Dry Aff. ¶¶ 4-6; James Aff. ¶¶ 2-4.)

The Court finds that the Summary Chart meets the requirements for the admission of summary evidence. The Court finds the original documents meet the voluminous requirement; that Plaintiff represents that it produced the documents to Defendant; that the

18

underlying documents, as the Court has discussed, are admissible; that Plaintiff has represented that the summary is nonprejudicial and accurate, and Defendant has not shown otherwise; and Plaintiff has put forth appropriate witnesses who supervised the preparation of the summary.  The Summary Chart is admissible and the Court will not strike it or the testimony regarding it.

**IV.  Defendant's motion to strike for lack of personal knowledge and contrary to prior Court order**

### A.  Personal knowledge

Defendant argues that Dry's affidavit is not based on personal knowledge.  (Dkt. 124, ¶ 2.)  Defendant posits that Dry states that he investigated dealer misconduct but that Dry "conspicuously does not state he investigated [Plaintiff.]"  (*Id.*)  Defendant therefore maintains that "[t]he matters asserted in [Dry's] affidavit are hearsay as any knowledge he has is at best second hand."  (*Id.*)  Defendant explains that Dry "only supervised" those employees who conducted the investigation and prepared the charts and documents attached as exhibits.  (*Id.*)

Defendant also argues that Dry lacks personal knowledge given the dates of his employment.  (Dkt. 124, ¶ 2.)  Defendant states that none of the events giving rise to this lawsuit occurred after October 2010, when Dry was Assistant Vice President.  (*Id.*)

Plaintiff argues that Dry states that he has personal knowledge of the facts within the affidavit, that Dry states that he personally reviewed the materials involved and supervised the employees who prepared and compiled the materials.  (Dkt. 129, Pl.'s Br. ¶ 24.)  Plaintiff argues that Dry states that he served as the Assistant Vice President Dealer Operations from 2007 until 2010 and that his duties included running the department that

19

investigated missing equipment disputes.  Plaintiff further argues that Dry states that he is aware, through personal experience and observation, of the inspection and record keeping systems of Plaintiff, the auto auctions, and the AutoIMS software system.  (*Id.*)

The Court agrees with Plaintiff and finds no reason to discredit the personal knowledge Dry swears to in the affidavit. The Court has also already discussed how Dry's knowledge entitles him to "other qualified witness" status, and allows him to authenticate those records about which he has knowledge.  The Court rejects Defendant's argument.

### B.  Knowledge of the Agreement

Defendant argues that Dry testified during his deposition that he had no knowledge of the Retail Agreement and that testimony directly contradicts Dry's statement in the affidavit, making the affidavit a "sham."  (Dkt. 124, ¶ 3.)

Plaintiff argues that Defendant did not attach the deposition transcript in which Dry states that he did not have personal knowledge of the Agreement–therefore Defendant has not supported its argument.  (Dkt. 129, Pl.'s Br. ¶ 25.)  Plaintiff further argues that between the time of Dry's deposition and his affidavit, that he became familiar with the Agreement. (*Id.*)

The Court agrees with Plaintiff, there is no reason to find that the affidavit is a sham, given Dry's statements.   The Court therefore rejects Defendant's argument.

### C.  Policies and procedures

Defendant argues that Dry is giving information about Plaintiff's policies and procedures and that the Court expressly prevented Defendant from deposing Dry about Plaintiff's policies and procedures.  (Dkt. 124, ¶ 4.)  Defendant further argues that Dry "has not laid a proper foundation that he has personal knowledge of the policy and procedures

20

on which he testified," for he has acknowledged that he has "only supervised other employers that have the personal knowledge of the matters asserted."  (*Id.*)

Plaintiff acknowledges that Judge Whalen issued an order prohibiting discovery into Plaintiff's policies and procedures.  Judge Whalen stated,

> Plaintiff's general policies and procedures have no discernible relevance to what the parties agree is the central issue in this case–whether the subject vehicles had the equipment options or accessories that Defendant represented they had.  Moreover, [Judge Whalen] is satisfied that these policies constitute trade secrets whose disclosure would wreak commercial harm on Plaintiff, with no legitimate countervailing benefit to [] Defendant.

(Dkt. 87, Order denying mot. for clarification at 1.) Judge Whalen further stated: "[A]lthough I am denying the present motion, I will do so without prejudice to Defendant filing a motion to compel discovery, based on allegations in the First Amended Complaint and any discovery that has occurred since this Court's previous order."  (*Id.* at 2.)

Plaintiff also states that, "[t]o the extent that [] Dry's affidavits discuss[] "policies and procedures," he discusses the relevant policies and procedures used in this case to determine the relevant issue--[]Defendant's Powerbooking--or as part of the foundation as a qualified witness for the introduction of the business records of Plaintiff through the Evidence Summary and the representative examples attached to [] Dry's affidavit."  (Dkt. 129, Pl.'s Resp. Br. ¶ 26.)

Judge Whalen issued his clarification order on May 11, 2012.  (Dkt. 87.)  He expressly pointed out that additional motions to compel certain testimony may be necessary concerning the policy and procedure issue.  (*Id.*)  Two weeks later, on May 25, 2012, Plaintiff filed its first motion for partial summary judgment.  (Dkt. 94.)  This motion included the exact affidavits that Defendant now moves to strike.  A month later, on June 26, 2012,

21

the Court held a telephonic conference and addressed and resolved all the pending discovery disputes.  The Court issued an order reflecting the matters it resolved.  (Dkt. 114.)  The Court ordered Plaintiff to withdraw its motion for partial summary judgment.  (*Id.*)  The Court also ordered Plaintiff to produce deposition witnesses and ordered Plaintiff to file a new motion for partial summary judgment.  (*Id.*)

On July 24, 2012, Plaintiff filed its motion for partial summary judgment.  (Dkt. 120.)  This motion again had the affidavits and exhibits in question attached.  (*Id.*)  On July 27, and then on August 2, and again on August 14, 2012, Defendant filed the present motions to strike. (Dkt. 124, 126, 132.)

The Court finds that Defendant had ample time and was on notice that Plaintiff was going to use these affidavits and the underlying exhibits in its motion for summary judgment.  Since Judge Whalen's order, on May 11, to the first motion to strike on July 27, two and half months passed.  Two months passed between Plaintiff's first motion for partial summary judgment and the first motion to strike.   Defendant had objections to the first motion for partial summary judgment, yet did not raise these issues until two months later.  The Court finds that the timing of these motions to strike after Defendant had notice and the opportunity to address the affidavits and exhibits is improper.  The Court rejects the policy and procedure argument on this basis as well.

## IV.   Conclusion

For the above-stated reasons, the Court DENIES Defendant's motions to strike.  (Dkt. 124, 126, 132.)

22

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 30, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager